IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OMEGA FLEX, INC.<br>451 Creamery Way,<br>Exton, Pennsylvania, 19341<br><br>            Plaintiff,<br><br>v.<br><br>STEADFAST INSURANCE COMPANY<br>1400 American Lane<br>Schaumburg, Illinois 60196<br><br>            Defendant. | Civil Action No:<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Omega Flex, Inc. ("Omega Flex"), by its undersigned attorneys, Steven M. Coren, Esquire and Kaufman, Coren & Ress, P.C., files the instant Complaint against Defendant Steadfast Insurance Company ("Steadfast"), asserting claims for declaratory relief and damages, as follows:

### INTRODUCTION

1. Plaintiff Omega Flex is a manufacturer of flexible metal hose products and the named insured under a commercial excess general liability policy issued by Defendant Steadfast covering products liability claims. In this litigation, Plaintiff seeks declaratory relief and damages against the Defendant insurer for its breach of its contractual obligations in connection with two class action cases (collectively, the "Lawsuits") seeking recovery for property damage allegedly caused by the defective design and manufacture of TracPipe® brand corrugated stainless steel tubing ("CSST"), an Omega Flex product used to carry fuel gas in commercial, residential, and industrial facilities. Specifically, even though both class action complaints

asserted claims that require the class to prove that Omega Flex's TracPipe® caused property damage to class members' homes that is covered by Steadfast's policy, and even though both class action complaints contain allegations creating the potential that Omega Flex could be held liable for such covered injuries, Steadfast denied any duty to defend or indemnify Omega Flex. Steadfast continued to deny its contractual obligations to Omega Flex, even after Omega Flex provided Steadfast with a detailed analysis demonstrating that both class action complaints made allegations bringing the claims asserted within the scope of coverage. Steadfast's position is contrary to the parties' express agreement and has deprived Omega Flex of the benefits due to it and for which it has paid substantial premiums.

2. In addition to damages, Omega Flex seeks two declarations: (1) that Steadfast is required to pay for the defense costs heretofore and hereafter incurred by Omega Flex to defend the Lawsuits; and (2) that Steadfast is obligated to pay and indemnify Omega Flex against any judgments that may be entered or settlements that may be reached in connection with the Lawsuits.

## THE PARTIES

3. Omega Flex is a Pennsylvania corporation with its principal place of business located at 451 Creamery Way, Exton, Pennsylvania 19341.

4. Steadfast is a Delaware corporation with its principal place of business located at 1400 American Lane, Schaumburg, Illinois 60196.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1332 (a)(1), in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

6. Venue is proper under 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claims (such as sale of the relevant insurance policies and transmission of relevant insurance claims correspondence) took place in this District and because the Defendant regularly transacts business in this District.

## FACTUAL BACKGROUND

**A. OMEGA FLEX**

7. Steadfast sold Omega Flex a primary policy and excess umbrella policy covering the policy period of July 22, 2010 to September 1, 2011.

8. Omega Flex is listed as the named insured under both policies.

9. The insurance policies discussed herein were purchased by Omega Flex to provide products liability insurance coverage.

**B. THE UNDERLYING CLASS ACTION LAWSUITS**

10. In or around January 1997, Omega Flex began manufacturing and distributing TracPipe® CSST, which is used to carry fuel gas in commercial, residential, and industrial facilities.

11. In the summer of 2013, Omega Flex was named as a defendant in two class action lawsuits seeking damages in connection with CSST, captioned *Hall v. Omega Flex, Inc.*, Case No. 0:13-cv-61213-WPD (United States District Court for the Southern District of Florida) (the "*Hall* Lawsuit"), and *Schoelwer v. Omega Flex, Inc.*, Case No. 1:13-cv-00496-SAS-KLL (United States District Court for the Southern District of Ohio) (the "*Schoelwer* Lawsuit") (collectively, the "Lawsuits"). A true and correct copy of the complaint filed in the *Hall* Lawsuit is attached hereto as Exhibit ("Ex.") A. A true and correct copy of the complaint filed in the *Schoelwer* Lawsuit is attached hereto as Ex. B.

12. On June 13, 2013, the Plaintiffs in the *Hall* Lawsuit filed their complaint (the "*Hall* Complaint") on behalf of a putative class of Florida property owners.

13. Omega Flex was served with the *Hall* Complaint on June 5, 2013.

14. In the *Hall* Complaint, the class plaintiffs alleged that CSST is defective and unsafe because, unless CSST is properly bonded and grounded, it could lead to increased risk of fire or combustion from near lightning strikes. The *Hall* Complaint further alleged that the product in fact caused fires resulting in property damage to houses built with TracPipe® CSST, including a number in the state of Florida. The *Hall* Complaint also alleged that a CSST product (not manufactured by Omega Flex) had in one case caused bodily injury and death, to an occupant of a house in which that product was installed.

15. Specifically, the *Hall* Complaint alleged as follows:

> 1. Omega Flex manufactured, distributed, and supplied TracPipe® corrugated stainless steel tubing ("CSST") throughout the United States, including Florida. (Ex. A, *Hall* Complaint at ¶ 1).
>
> 2. CSST is an ultrathin, flexible piping used to transport natural gas within both residential and commercial structures. It was developed as an alternative to the much thicker, more durable black iron pipe that has been used to transport gas within residential and commercial structures for more than a century. (Ex. A, *Hall* Complaint at ¶ 2).
>
> 3. This action alleges that Omega Flex improperly designed and manufactured TracPipe® and failed to properly test its resistance to lightning strikes. TracPipe's thin walls are susceptible to perforation by an electrical arc generated by a lightning strike, which can cause and has caused fires, damage to and destruction of residential structures, and creates a substantial and unreasonable risk of death or personal injury. (Ex. A, *Hall* Complaint at ¶ 3).
>
> 4. For instance, in Lubbock, Texas in August 2012, one person was killed and another seriously injured when a lightning strike punctured the CSST in a house, instigating a natural gas-fueled fire. Fire and smoke damage affected the entire structure. (Ex. A, *Hall* Complaint at ¶ 4).

4

5.   It is well documented that TracPipe® CSST can fail catastrophically in the presence of lightning. *See* SEFTIM, *Final Report for Validation of Installation Methods for CSST Gas Piping to Mitigate Lightning Related Damage*. The Fire Protection Research Foundation (April 2011), *available at* http://www.nfpa.org/assets/files/PDF/Research/CSST%20Gas%20Piping%20Ph.1%20Final%20Report.pdf. When the gas line becomes energized, the energy from the lightning strike passes through it in search of a path to ground. As it seeks a path to ground, the energy from the lightning strike may jump off the CSST, usually through the air to another nearby conductive material, in what is known as an arcing event. The temperature generated by this lightning-induced event is measured in thousands of degrees, which is easily hot enough to melt and penetrate through the thin skin of the CSST, even though the arcs last only a fraction of a second. When the gas line melts, gas inside is allowed to escape and is ignited by the melting event, causing a gas-fueled fire. (Ex. A, *Hall* Complaint at ¶ 5).

6.   A 2005 expert report prepared by Mark Goodson, a specialist in electrical and mechanical failure analysis, concluded: "CSST fails when the CSST is contacted by electrical current associated with lightning. Due to its uniform design, all CSST fails in the same manner when insulted by lightning: electricity contacts the CSST, the CSST acts as a conduit for the electrical current, the electricity perforates the pipe and permits gas to escape. During this process, there is ignition of the escaping gas. This problem uniformly affects all CSST brands, in that the products have the same inherent design, thickness (or lack thereof) and physical properties." Mark Goodson and Mark Hergenrether, "*The Causal Link Between Lightning Strikes, CSST, And Fire*," Fire and Arson Investigator (October 2005), available at http://goodsonengineering.com/wp-content/uploads/2011/08/InvestigatingtheCasualLinkBetweenLightningStrikesCSSTFire.pdf. (Ex. A, *Hall* Complaint at ¶ 6).

7.   The presence of TracPipe® in Plaintiff and Class Members' structures creates an unreasonable risk of fire due to lightning strikes. (Ex. A, *Hall* Complaint at ¶ 8).

8.   As of August 2011, 141 fires involving lightning and CSST have been reported throughout the United States. *See* SEFTIM, *Final Report for Validation of Installation Methods for CSST Gas Piping to Mitigate Lightning Related Damage*. The Fire Protection Research Foundation (April 2011), *available at*

> http://www.nfpa.org/assets/files/PDF/Research/CSST%20Gas%20Piping%20Ph.1%20Final%20Report.pdf. (Ex. A, *Hall* Complaint at ¶ 40).
>
> 9. By reason of the foregoing, Omega Flex is strictly liable in tort to Plaintiff and the Class for designing, manufacturing, testing, inspecting, distributing, marketing and/or selling TracPipe®. (Ex. A, *Hall* Complaint at ¶ 87).
>
> 10. Said defects in TracPipe® were a substantial factor in causing Plaintiff and the Class *damages and injuries* and/or placing Plaintiff and the Class members at increased risk of damage and/or harm. (Ex. A, *Hall* Complaint at ¶ 88, emphasis added).
>
> 11. As a direct, proximate, and foreseeable result of the defective condition of TracPipe® as manufactured and sold by Omega Flex, Plaintiff and the Class *have suffered, and will continue to suffer, damages*. (Ex. A, *Hall* Complaint at ¶ 89, emphasis added).

16. The *Hall* Complaint asserts causes of actions for Strict Liability – Design and Manufacturing Defect (Count 1); Negligence – Design Defect: Failure to Test (Count 2); Negligence – Failure to Warn (Count 3).

17. The *Hall* Complaint explicitly seeks "compensatory damages sustained by Plaintiff and the Class." (Ex. A, *Hall* Complaint at Prayer for Relief ¶ 2).

18. Omega Flex engaged the law firm of Kirkland & Ellis LLP to investigate and defend the *Hall* Lawsuit.

19. The *Hall* Lawsuit has been dismissed.

20. As of July 23, 2014, Omega Flex has spent more than $578,246.62 to investigate and defend the *Hall* Lawsuit.

21. On July 18, 2013, the Plaintiffs in the *Schoelwer* Lawsuit filed their Complaint (the "*Schoelwer* Complaint") on behalf of a putative class of Ohio property owners.

22. Omega Flex was served with the *Schoelwer* Complaint on August 5, 2013.

6

23. In the *Schoelwer* Complaint, the class plaintiffs alleged that CSST is defective and unsafe because, unless it is properly bonded and grounded, CSST could lead to increased risk of fire or combustion from near lightning strikes. The *Schoelwer* Complaint further alleged that the product in fact caused fires resulting in property damage to houses built with TracPipe® CSST, including a number in the state of Florida. The *Schoelwer* Complaint also alleged that a CSST product (not manufactured by Omega Flex) had in one case caused bodily injury and death, to an occupant of a house in which that product was installed.

24. Specifically, the *Schoelwer* Complaint alleged as follows:

   1. Omega Flex manufactured, distributed, and supplied TracPipe® corrugated stainless steel tubing ("CSST") throughout the United States, including Ohio. (Ex. B, *Schoelwer* Complaint at ¶ 1).

   2. CSST is an ultrathin, flexible piping used to transport natural gas within both residential and commercial structures. It was developed as an alternative to the much thicker, more durable black iron pipe that has been used to transport gas within residential and commercial structures for more than a century. (Ex. B, *Schoelwer* Complaint at ¶ 2).

   3. This action alleges that Omega Flex improperly designed and manufactured TracPipe® and failed to properly test its resistance to lightning strikes. TracPipe's thin walls are susceptible to perforation by an electrical arc generated by a lightning strike, which can cause and has caused fires, damage to and destruction of residential structures, and creates a substantial and unreasonable risk of death or personal injury. (Ex. B, *Schoelwer* Complaint at ¶ 3).

   4. For instance, in Lubbock, Texas in August 2012, one person was killed and another seriously injured when a lightning strike punctured the CSST in a house, instigating a natural gas-fueled fire. Fire and smoke damage affected the entire structure. (Ex. B, *Schoelwer* Complaint at ¶ 4).

   5. It is well documented that TracPipe® CSST can fail catastrophically in the presence of lightning. *See* SEFTIM, *Final Report for Validation of Installation Methods for CSST Gas*

7

*Piping to Mitigate Lightning Related Damage.* The Fire Protection Research Foundation (April 2011), *available at* http://www.nfpa.org/assets/files/PDF/Research/CSST%20Gas%20Piping%20Ph.1%20Final%20Report.pdf ("the Report"). When the gas line becomes energized, the energy from the lightning strike passes through it in search of a path to ground. As it seeks a path to ground, the energy from the lightning strike may jump off the CSST, usually through the air to another nearby conductive material, in what is known as an arcing event. The temperature generated by this lightning-induced event is measured in thousands of degrees, which is easily hot enough to melt and penetrate through the thin skin of the CSST, even though the arcs last only a fraction of a second. When the gas line melts, gas inside is allowed to escape and is ignited by the melting event, causing a gas-fueled fire. (Ex. B, *Schoelwer* Complaint at ¶ 5).

6. A 2005 expert report prepared by Mark Goodson, a specialist in electrical and mechanical failure analysis, concluded: "CSST fails when the CSST is contacted by electrical current associated with lightning. Due to its uniform design, all CSST fails in the same manner when insulted by lightning: electricity contacts the CSST, the CSST acts as a conduit for the electrical current, the electricity perforates the pipe and permits gas to escape. During this process, there is ignition of the escaping gas. This problem uniformly affects all CSST brands, in that the products have the same inherent design, thickness (or lack thereof) and physical properties." Mark Goodson and Mark Hergenrether, "*The Causal Link Between Lightning Strikes, CSST, And Fire*," Fire and Arson Investigator (October 2005), available at http://goodsonengineering.com/wp-content/uploads/2011/08/InvestigatingtheCasualLinkBetweenLightningStrikesCSSTFire.pdf. (Ex. B, *Schoelwer* Complaint at ¶ 6).

7. The presence of TracPipe® in Plaintiff and Class Members' structures creates an unreasonable risk of fire due to lightning strikes. (Ex. B, *Schoelwer* Complaint at ¶ 8).

8. As of August 2011, 141 fires involving lightning and CSST have been reported throughout the United States. *See* The Report, *available at* http://www.nfpa.org/assets/files/PDF/Research/CSST%20Gas%20Piping%20Ph.1%20Final%20Report.pdf. (Ex. B, *Schoelwer* Complaint at ¶ 39).

       9.     By reason of the foregoing, Omega Flex is strictly liable in tort to Plaintiff and the Class for designing, manufacturing, testing, inspecting, distributing, marketing and/or selling TracPipe®. (Ex. B, *Schoelwer* Complaint at ¶ 77).

      10.    Said defects in TracPipe® were a substantial factor in causing Plaintiff and the Class damages and injuries and/or placing Plaintiff and the Class members at increased risk of damage and/or harm. (Ex. B, *Schoelwer* Complaint at ¶ 78).

      11.    As a direct, proximate, and foreseeable result of the defective condition of TracPipe® as manufactured and sold by Omega Flex, Plaintiff and the Class have suffered, and will continue to suffer, damages. (Ex. B, *Schoelwer* Complaint at ¶ 79).

25.    The *Schoelwer* Complaint asserts causes of actions for Strict Liability – Design and Manufacturing Defect (Count 1); Violation of O.R.C. § 2307.75 (Count 2); Violation of O.R.C. § 2307.76 (Count 3); Breach of the Implied Warranty in Tort (O.R.C. § 1302.27 and Common Law) (Count 4); Negligent Failure to Warn (Count 5).

26.    The *Schoelwer* Complaint explicitly seeks "compensatory damages for the harm and damages sustained by Plaintiff and the Class." (Ex. B, *Schoelwer* Complaint at Prayer for Relief ¶ 2).

27.    Omega Flex engaged the law firm of Kirkland & Ellis LLP to investigate and defend the *Schoelwer* Lawsuit.

28.    As of July 23, 2014, Omega Flex has spent more than $160,565.03 to investigate and defend the *Schoelwer* Lawsuit.

**C.    THE 2010-2011 PRIMARY STEADFAST POLICY**

29.    Steadfast sold a primary level policy no. EZL 5968462-00 to Omega Flex, with a policy period of July 22, 2010 to September 1, 2011 (referred to herein as the "Primary Steadfast Policy").

30. A true and correct copy of the Primary Steadfast Policy is attached hereto as Ex. C.

31. Omega Flex is a named insured for the Primary Steadfast Policy pursuant to Commercial General and Pollutions Liability Declarations. (Ex. C at Commercial General and Pollutions Liability Declarations).

32. The limits of the Primary Steadfast Policy are $1,000,000 per occurrence and $2,000,000 in the aggregate for products/completed operations coverage, subject to a $75,000 Self-Insured Retention ("SIR"), which applies on a per-occurrence basis.

33. Omega Flex has satisfied the $75,000 per-occurrence SIR for the Primary Steadfast Policy, as Steadfast confirmed in a letter dated October 9, 2012. A true and correct copy of the October 9, 2012 letter is attached as Ex. D.

34. The limits of the Primary Steadfast Policy have been exhausted by payment of other claims.

35. All premiums due under the Primary Steadfast Policy and Excess Steadfast Policy have been paid.

36. Omega Flex has fully complied with all of the terms and conditions of the Primary Steadfast Policy.

**D.  THE 2010-2011 EXCESS STEADFAST POLICY**

37. Steadfast also sold follow form excess liability policy no. SEO-5968402-00 to Omega Flex with a policy period of July 22, 2010 to September 1, 2011 (referred to hereinafter as "Excess Steadfast Policy").

38. A true and correct copy of the Excess Steadfast Policy is attached hereto as Ex. E.

39. The limits of the Excess Steadfast Policy are $10,000,000 per occurrence and $10,000,000 in the aggregate for products hazard and completed operations coverage (Ex. E at Item 4.a., c. - Follow Form Excess Liability Policy – Occurrence Form Declarations).

40. Omega Flex is a named insured for the Follow Form Excess Steadfast Policy pursuant to Excess Liability Policy – Occurrence Form Declarations. (Ex. E at Follow Form Excess Liability Policy – Occurrence Form Declarations).

41. The Excess Steadfast Policy states that Steadfast agrees "to indemnify the insured for that portion of the ultimate net loss in excess of the underlying insurance limits stated in items 7.B. of the Declarations, which the insured shall become legally obligated to pay as damages because of bodily-injury, [or] property damage . . . caused by an occurrence to which this insurance applies." (Ex. E at Section I.A. Insuring Agreements).

42. The Excess Steadfast Policy also states that "[e]xcept as otherwise provided by this policy, the insurance afforded herein shall follow all the terms, conditions, definitions and exclusions of the controlling underlying policy designated in Item 7A. of the Declarations." (Ex. E at Section I.B. Insuring Agreements).

43. The Primary Steadfast Policy is listed as the underlying policy to the Excess Steadfast Policy with respect to the coverages at issue in the instant dispute. (Ex. C, at Schedule of Underlying Insurance).

44. The Excess Steadfast Policy applies upon exhaustion of the underlying primary coverage Steadfast sold to Omega Flex. (Ex. E at Section IV. INVESTIGATION, DEFENSE, SETTLEMENT ¶ F).

45. The Excess Steadfast Policy does not define the term "occurrence."

11

46. The Primary Steadfast Policy defines the term "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Ex. C at 7. Common Definitions (cc)).

47. The Excess Steadfast Policy defines the term "property damage" to mean: (1) "[p]hysical injury to or destruction of tangible property, including loss of use thereof at any time resulting therefrom"; or (2) "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence to which this insurance applies. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (Ex. E at Section V, Definitions ¶ H).

48. The Excess Steadfast Policy defines the term "ultimate net loss" to mean "the amount actually paid or payable in the settlement or satisfaction of claims or suits for which the **insured** is liable either by final judgment after actual trial . . . or by compromise with our written consent, after making proper deduction for all recoveries and salvages collectible." (Ex. E at Defense Costs in Addition to Limits Endorsement). The Excess Steadfast Policy further prescribes that defense costs are to be paid in addition to policy limits. (*See id.*)

49. Omega Flex gave Steadfast timely notice of the Lawsuits.

50. All premiums due under the Excess Steadfast Policy have been paid.

51. Omega Flex has fully complied with all of the terms and conditions of the Excess Steadfast Policy.

E. **COMMUNICATIONS WITH STEADFAST**

52. In an October 9, 2012 letter regarding coverage for another claim involving CSST, Steadfast agreed that claims involving defects in Omega Flex's CSST product qualify as a single occurrence for purposes of calculating the Self Insured Retention, applicable to the

Steadfast Primary Policy. Specifically, the October 9 letter provides that because "the 'claims' and/or 'suits' constitute a single 'occurrence' involving the Tracpipe PS-II product, a single Self Insured Retention . . . applies to these matters." (Ex. D at p. 4).

53. Steadfast received notice of the *Hall* Lawsuit through a letter dated July 1, 2013. A true and correct copy of the July 1, 2013 letter is attached as Ex. F.

54. Steadfast confirmed notice of the *Hall* Lawsuit through a letter dated July 18, 2013. A true and correct copy of the July 18, 2013 letter is attached as Ex. G.

55. By letters dated August 16, 2013 and September 9, 2013, Steadfast confirmed that the Primary Steadfast Policy has been exhausted through the payment of various claims, and denied any obligation under the Primary Steadfast Policy. A true and correct copy of the August 16, 2013 letter is attached as Ex. H. A true and correct copy of the September 9, 2013 letter is attached as Ex. I.

56. By letter dated August 16, 2013, Steadfast denied coverage for the *Hall* Lawsuit under the Excess Steadfast Policy.

57. Steadfast received notice of the *Schoelwer* Lawsuit through a letter dated August 20, 2013. A true and correct copy of the August 20, 2013 letter is attached as Ex. J.

58. Steadfast confirmed notice of the *Schoelwer* Lawsuit through an email dated September 3, 2013. A true and correct copy of the September 3, 2013 e-mail is attached as Ex. K.

59. By letter dated September 9, 2013, Steadfast denied coverage for the *Schoelwer* Lawsuit under the Excess Steadfast Policy.

60. In its August 16 and September 9 letters, and contrary to the explicit allegations in the pleadings of the Lawsuits, Steadfast further erroneously denied any defense or indemnity

obligation under the Excess Steadfast Policy on grounds that there ostensibly were "no allegations" of an "occurrence," as defined in the Primary Steadfast Policy because the complaints in the *Hall* and *Schoelwer* Lawsuits supposedly "contained no allegations that [the named plaintiff] or any other specific person has suffered 'bodily injury'[or] 'property damage' . . . ." (Ex. H, p. 4; Ex. I, p. 4). Steadfast further erroneously denied coverage on the ground that the "[c]omplaint contains allegations that Omega Flex knowingly and intentionally exposed the plaintiff to a hazardous product." (Ex. H, p. 5; Ex. I, p. 5). Steadfast erroneously invoked these allegations as support for its assertion that the "expected or intended" exclusion in its policy served to preclude coverage altogether, notwithstanding that the complaints in both the *Hall* and *Schoelwer* Lawsuits also allege negligent conduct. Indeed, the Lawsuits each include a count for Negligent Failure to Warn.

61. By letter dated March 27, 2014, counsel for Omega Flex wrote to the claim specialist for Steadfast enumerating the reasons why Steadfast should withdraw its declinations of coverage and honor its obligations to pay the defense costs being incurred by Omega Flex in the *Hall* and *Schoelwer* Lawsuits. A true and correct copy of the March 27, 2014 letter is attached as Ex. L. Omega Flex pointed to several allegations in the Lawsuits which assert that Omega Flex's product had caused damage and fires to homes located in states where the putative class members resided. Moreover, Omega Flex demonstrated that the causes of actions asserted in the Lawsuits require the class plaintiffs to prove property damage to succeed. (Ex. L at p. 3).

62. By letter dated May 22, 2014, Steadfast reaffirmed its coverage denials for the Lawsuits. A true and correct copy of the May 22, 2014 letter is attached as Ex. M. As a basis for its denial, Steadfast continued to assert that "there are no allegations of . . . an 'occurrence", 'bodily injury' [or] 'property damage', . . . nor are there damages sought because of either

'bodily injury', [or] 'property damage' . . . ." (Ex. M at p. 5). In taking this position, Steadfast simply disregarded the allegations identified in Omega Flex's March 27 correspondence establishing that the complaints in the Lawsuits create a potential for liability for "property damage" covered by the Steadfast Policy by alleging that Omega Flex's CSST product has caused fires and resulting property damage, including injuries to putative class members in the states where the Lawsuits were filed. Steadfast also continued erroneously to invoke the "expected or intended" exclusion in its Primary Steadfast Policy as a bar to coverage, despite allegations of negligence in both complaints filed in the Lawsuits. (Ex. M, at p. 6). Moreover, Steadfast raised two additional exclusions not raised in its initial declination letters, as grounds for denying coverage. First, Steadfast asserted an exclusion applicable to "impaired property or property not physically damaged." (Ex. M, at p. 5-6). Steadfast invoked this exclusion notwithstanding that, by its express terms, the exclusion could apply only if there are no allegations of property damage, and that, as Omega Flex demonstrated in its May 22 letter, the *Hall* and *Schoelwer* complaints alleged, among other things, that Omega Flex's CSST caused fires resulting in property damage, including to homes of putative class members. Steadfast further asserted an exclusion for the "recall of products," despite the fact that the complaints in the Lawsuits contain no allegations that CSST had been the subject of a recall.

63.     Steadfast has not paid any of the defense costs or other expenses incurred by Omega Flex in connection with the Lawsuits.

**COUNT I – DECLARATORY JUDGMENT: DUTY TO DEFEND**

64.     Omega Flex repeats and realleges the averments in paragraphs 1 through 63 of this complaint as if fully set forth herein.

65. The Excess Steadfast Policy insures Omega Flex against "damages" because of "property damage" caused by an "occurrence" that occurred during the policy period, as the terms are defined and used in the Excess Steadfast Policy, and defense costs incurred in connection with suits alleging such "damages."

66. The complaints in the Lawsuits create the potential that Omega Flex could be held liable for such covered damages.

67. Omega Flex contends that Steadfast is obligated under the Excess Steadfast Policy to pay all of Omega Flex's defense costs and other costs and expenses incurred in connection with the Lawsuits as such defense costs were incurred.

68. Omega Flex contends that it has complied with all terms and conditions contained in the Steadfast Excess Policy, except to the extent its performance has been or is excused or waived by Steadfast.

69. Omega Flex contends that there are no exclusions in the Excess Steadfast Policy that could apply to eliminate coverage for the Lawsuits.

70. Steadfast has denied that it has any obligation to pay Omega Flex's defense costs in connection with the Lawsuits.

71. An actual controversy exists between Omega Flex and Steadfast concerning Steadfast's obligations under the Excess Steadfast Policy.

72. Pursuant to the express terms of the Excess Steadfast Policy, Omega Flex is entitled to a declaration that Steadfast is obligated to pay all of Omega Flex's defense costs that Omega Flex has incurred, and may incur, in the future in connection with the Lawsuits.

### COUNT II – DECLARATORY JUDGMENT: DUTY TO INDEMNIFY

73. Omega Flex repeats and realleges the averments in paragraphs 1 through 72 of this complaint as if fully set forth herein.

74. Omega Flex contends that Steadfast is obligated under the Excess Steadfast Policy to pay any judgment entered or settlement amount incurred in the Lawsuits.

75. Omega Flex contends that it has complied with all terms and conditions contained in the Steadfast Excess Policy, except to the extent its performance has been or is excused or waived by Steadfast.

76. Omega Flex contends that there are no exclusions in the Excess Steadfast Policy that could apply to eliminate coverage for the Lawsuits.

77. Steadfast has denied that it has any obligation to indemnify Omega Flex for any judgment entered or settlement paid in the Lawsuits.

78. An actual controversy exists between Omega Flex and Steadfast concerning Steadfast's obligations under the Excess Steadfast Policy.

79. Pursuant to the express terms of the Excess Steadfast Policy, Omega Flex is entitled to a declaration that Steadfast is obligated to pay any judgments entered or settlements paid in connection with the Lawsuits.

### COUNT III – BREACH OF CONTRACT: DUTY TO DEFEND

80. Omega Flex repeats and realleges the averments in paragraphs 1 through 79 of this complaint as if fully set forth herein.

81. The Excess Steadfast Policy constitutes a binding contract of insurance.

82. Steadfast has agreed to provide defense coverage for claims seeking damages because of property damage as defined in the Excess Steadfast Policy.

83. By failing to pay Omega Flex's defense costs and other costs and expenses incurred in connection with the Lawsuits, including any future costs, Steadfast has breached the Excess Steadfast Policy.

84. Steadfast also has breached its duties under the Excess Steadfast Policy and law to conduct a thorough investigation, including investigating all bases that might support Omega's Flex's claim for coverage, before denying coverage.

85. Steadfast seeks to avoid its obligations to pay defense costs for the Lawsuits, despite allegations by the class plaintiffs that they have suffered covered injuries, including property damage, caused by Omega Flex's CSST and seek covered damages for these injuries.

86. Steadfast has breached its duties under the Excess Steadfast Policy by, among other things:

   a. Refusing to pay defense costs associated with the Lawsuits;

   b. Asserting grounds to avoid coverage that it knows are not supported by, and are contrary to, the terms of the Excess Steadfast Policy, law, and the facts alleged in the Lawsuits;

   c. Failing to conduct an adequate investigation and evaluation of the allegations asserted in the Lawsuits and citing to allegations that arguably do not fall within the scope of coverage while ignoring allegations that clearly fall within coverage as the basis for denying coverage;

   d. Failing to fully inquire into possible bases that might support coverage for the Lawsuits;

   e. Unreasonably interpreting the Excess Steadfast Policy language in its favor and contrary to its terms;

   f. By giving greater consideration to its own interests than it gave to Omega Flex's interests.

87. Omega Flex has suffered injuries and damages, and will continue to suffer injuries and damages, because of Steadfast's breach of contract, including, but not limited to, incurring substantial attorneys' fees, and other costs and expenses.

## COUNT IV – BREACH OF CONTRACT: DUTY TO INDEMNIFY

88. Omega Flex repeats and realleges the averments in paragraphs 1 through 87 of this complaint as if fully set forth herein.

89. Steadfast has agreed to indemnify Omega Flex for claims seeking damages because of property damage as defined in the Excess Steadfast Policy.

90. By denying any obligation to indemnify Omega Flex for any judgments entered or settlements paid in connection with the Lawsuits, Steadfast has breached the Excess Steadfast Policy.

91. Steadfast also has breached its duties under the Excess Steadfast Policy, and law, to conduct a thorough investigation, including investigating all bases that might support Omega's Flex's claim for coverage, before denying coverage.

92. Steadfast seeks to avoid its obligations to pay indemnity for the Lawsuits, despite allegations by the class plaintiffs that they have suffered covered injuries, including property damage, caused by Omega Flex's CSST and seek covered damages for these injuries.

93. Omega Flex has suffered injuries and damages, and will continue to suffer injuries and damages, because of Steadfast's breach of contract, including, but not limited to, incurring substantial attorneys' fees, and other costs and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Omega Flex demands that judgment be entered in its favor and against Defendant Steadfast for:

(a) Declaratory relief as aforesaid;

(b) Damages for breach of contract against Steadfast in an amount to be determined at trial;

(c) Pre-judgment and post-judgment interest; and

(d)     Such further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

The Plaintiff hereby demands a jury trial on all issues so triable.

Dated: August 19, 2014

KAUFMAN, COREN & RESS, P.C.

_____
STEVEN M. COREN
DAVID DEVITO
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
(215) 735-8700

and

HELEN K. MICHAEL (admission *pro hac vice* to be sought)
TYECHIA L. WHITE (admission *pro hac vice* to be sought)
KILPATRICK, TOWNSEND & STOCKTON LLP
607 14th Street, NW
Suite 900
Washington, DC 20020
(202) 508-5866